

**NUMBER 13-15-00588-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

**MAVERICK OIL TOOLS, LLC,** <span style="float:right">**Appellant,**</span>

**v.**

**DEM WELL HEAD SERVICES, LLC,** <span style="float:right">**Appellee.**</span>

**On appeal from the 343rd District Court
of San Patricio County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Contreras and Hinojosa
Memorandum Opinion by Chief Justice Valdez**

By four issues, appellant Maverick Oil Tools, LLC (Maverick) challenges the trial court's denial of its motion for new trial and motion to modify the judgment contending that (1) the trial court should have granted its motion for new trial under *Craddock* (issues one and two); (2) the damages awarded to appellee DEM Well Head Services, LLC (DEM) were not supported by sufficient evidence (issue three); and (3) the trial court erred in

calculating prejudgment interest (issue four).  *See Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939).  We affirm.

## I.  MOTION FOR NEW TRIAL

### A.  Pertinent Facts

The trial court held a hearing on Maverick's motion for new trial.  At this hearing, Maverick did not present any testimony and relied on the sworn affidavit of Jim Dane, Maverick's owner.  In his affidavit, Dane stated that after being served with this lawsuit on June 18, 2015, "Maverick reached out to DEM" and attempted to resolve this lawsuit with DEM and that Dane "on behalf of Maverick had multiple discussions with DEM in regards to potential solutions of the issues between the parties."  Dane claimed that "[o]n August 3, 2015, DEM directed [him] to speak with their attorney . . . about a settlement proposal" and after contacting DEM's attorney, "it was decided that a three way call between Maverick, DEM, and [DEM's attorney] would be the most appropriate way to conduct further negotiations."  Dane stated that a proposal for settlement was provided to Maverick, and he then received the default judgment that was signed on August 6, 2015.

At the motion for new trial hearing, Carmel Martinez, DEM's owner, testified that Maverick had failed to pay invoices for the rental of certain equipment from DEM. Martinez stated that he had spoken with Dane on several occasions.  However, Martinez denied that these discussions "contemplated" a settlement of the case.  When asked by DEM's trial counsel, "Did Mr. Dane ever offer to settle the case with you," and "What he owed you," Martinez responded "No" to both questions.  Martinez testified that he "felt" that Dane "was dragging on" and was "trying to get information" about "something that was irrelevant."  Martinez said, "He basically continued to ask questions about [a] company, when that had nothing to do with our business."  DEM's trial counsel asked,

2

"All right, sir. So when [Dane] says that he was working with you towards a resolution of issues, would that be true or not true?" Martinez replied, "That would be false."[1] When asked by DEM's trial counsel, "To your knowledge, [DEM's trial counsel] only had one conversation with Mr. Dane; is that right" and "I believe it was on August 10th," Martinez answered "Yes." Martinez agreed with DEM's trial counsel that the conversation between Dane and DEM's trial counsel occurred after the default judgment had been signed and that in a three-way conversation, DEM's trial counsel "made it clear" to Dane "that the default judgment had already been obtained against him."

## B. Standard of Review and Applicable Law

The denial of a motion for new trial under *Craddock* is reviewed for an abuse of discretion. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009); *see also Craddock*, 133 S.W.2d at 126. "We . . . review the record to determine if, based on the facts before it, the trial court abused its discretion in overruling" the motion for new trial. *Balogh v. Ramos*, 978 S.W.2d 696, 698 (Tex. App.—Corpus Christi 1998, pet. denied).

Specifically, as relevant here, to set aside the default judgment, Maverick must have established that its reason for not appearing was due to a mistake or accident and was not intentional or the result of conscious indifference.[2] *See Levine v. Shackelford, Melton & McKinley, L.L.P.*, 248 S.W.3d 166, 168 (Tex. 2008) (citing *Craddock*). Under

---

[1] On cross-examination, Maverick's trial counsel asked Martinez, "So just to clear up. Prior to August 10th three-way phone call, Mr. Dane had never suggested or brought up the issue of trying to exchange equipment against balance?" Martinez replied, "No. Never did he do that."

[2] A default judgment should be set aside and a new trial ordered under *Craddock* if: (1) the defendant's failure to answer was not intentional, or the result of conscious indifference, and due to mistake or accident; (2) the motion sets up a meritorious defense; and (3) granting the motion will not occasion delay or otherwise work an injury to the plaintiff. *Padrino Mar., Inc. v. Rizo*, 130 S.W.3d 243, 247 (Tex. App.—Corpus Christi 2004, no pet.) (citing *Craddock*). The parties agreed at the motion for new trial hearing that the only element at issue is whether Maverick's failure to answer was due to mistake.

3

this standard, Maverick must have negated a finding that it *knew* about the lawsuit but did not care to answer it. *See id.*

When deciding whether to grant or deny a motion for new trial challenging the trial court's default judgment under *Craddock*, the trial court is bound to accept as true the affidavits of the movant, unless the trial court holds an evidentiary hearing. *Averitt v. Bruton Paint & Floor Co.*, 773 S.W.2d 574, 576 (Tex. App.—Dallas 1989, no pet.). If a hearing is held, the party moving to set aside a default judgment must prove the facts so alleged by a preponderance of the evidence. *Roberts v. Roberts*, 621 S.W.2d 835, 836 (Tex. App.—Waco 1981, no writ.). "When the plaintiff controverts the defendant's allegations, the trial court must look to the knowledge and acts of the defendant to determine whether his conduct was the result of conscious indifference or intentional disregard." *Holberg v. Short*, 731 S.W.2d 584, 586–87 (Tex. App.—Houston [14th Dist.] 1987, no pet.) (citing *Strackbein v. Prewitt*, 671 S.W.2d 37, 38–39 (Tex.1984)). "Where the non-movant presents evidence at the new trial hearing tending to show intentional or consciously indifferent conduct, it becomes a question for the trial court to determine." *Jackson v. Mares*, 802 S.W.2d 48, 50 (Tex. App.—Corpus Christi 1990, writ. denied).

## C.    Analysis

By its first and second issues, Maverick contends that its failure to answer was due to accident or mistake, and the trial court abused its discretion by denying its motion for new trial. Specifically, Maverick argues that it provided evidence that prior to the default judgment, Maverick and DEM were negotiating a settlement.

At the motion for new trial hearing, DEM presented evidence controverting Dane's assertions that the parties had been negotiating a settlement prior to the default judgment. Therefore, whether Maverick was consciously indifferent by failing to file an answer to

4

DEM's lawsuit became a question of fact for the trial court. *See id.* And "[t]he court, as fact-finder at a hearing on a motion for new trial, has the duty of ascertaining the true facts . . . and it is within the court's province to judge the credibility of the witnesses and to determine the weight to be given their testimony." *Id.* at 51. While negotiating a settlement agreement may be a valid excuse under certain circumstances for a failure to answer, because here the trial court held a hearing, there must be competent proof of the excuse to negate intentional conduct or conscious indifference. *See Roberts*, 621 S.W.2d at 836; *see also Pentes Design, Inc. v. Perez*, 840 S.W.2d 75, 79 (Tex. App.—Corpus Christi 1992, writ denied) (recognizing that other courts have concluded that negotiating a settlement agreement in certain circumstance may excuse a default judgment). Here, however, in his affidavit, Dane did not specifically state that the parties were negotiating a settlement agreement prior to the default judgment. Instead, Dane made vague, conclusory statements concerning attempts to resolve this lawsuit and discussions regarding potential solutions. Therefore, Dane's affidavit shows no indication of settlement or other excuse for Maverick's failure to answer. *See Pentes Design, Inc. v. Perez*, 840 S.W.2d at 79 (Tex. App.—Corpus Christi 1992, writ denied) ("In the present case, however, Pentes' conclusory allegation that the lawsuit was being 'resolved on a semi-informal basis,' together with the exhibits supposedly supporting this allegation, shows no indication of settlement or other excuse for [the] failure to answer as required."). In addition, the trial court could have believed Martinez that DEM and Maverick had not been negotiating a settlement agreement prior to the default judgment despite Dane's claims to the contrary. *See Jackson*, 802 S.W.2d at 51. Therefore, the trial court, within its discretion, could have found that Maverick presented no excuse for its failure to file an answer and that Maverick's failure to answer was intentional or the result of conscious

indifference. *See id.* After reviewing the evidence, we cannot say that the trial court acted in an unreasonable or arbitrary manner or without reference to any guiding rules and principles when it denied Maverick's motion for new trial. *See Dolgencorp of Tex., Inc.*, 288 S.W.3d at 926. We overrule Maverick's first and second issues.

## II.   DAMAGES

By its third issue, Maverick contends that the evidence was insufficient to support the damages awarded to DEM.[3] Specifically, Maverick claims that the damages should have been $205,971.89 because the trial court should have credited it $60,702.

"A no-answer default judgment operates as an admission of the material facts alleged in the plaintiff's petition, except for unliquidated damages." *Pentes Design, Inc. v. Perez*, 840 S.W.2d 75, 79 (Tex. App.—Corpus Christi 1992, writ. denied). And, proof of damages is only required if the damages are either unliquidated or not proven by a written instrument. *Id.* "A claim is liquidated if the amount of damages can be accurately calculated by the court from the factual as opposed to the conclusory allegations in the petition and an instrument in writing."[4] *Id.*

Accordingly, Maverick's failure to answer operated as an admission of the material facts which included invoices for liquidated damages. *See Novosad v. Cunningham*, 38 S.W.3d 767, 773 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (providing that by his failure to answer, the defaulting defendant admitted the amount of liquidated damages

---

[3] The trial court awarded $282,903.61 to DEM, but it subsequently modified the judgment and reduced the amount to $226,322.89. We agree with Maverick that the total amount of the invoices equals approximately $266,700. Here, the trial court's award of $226,322.89 is well below that amount.

[4] It is undisputed that the damages awarded were liquidated damages. A suit on a sworn account with the petition and attached sworn account with a verified affidavit of the sworn account constitutes a liquidated claim proved by written instruments. *Sheldon v. Emergency Med. Consultants*, 43 S.W.3d 701, 702–03 (Tex. App.—Fort Worth 2001, no pet.). DEM sued Maverick for a suit on a sworn account and attached to its petition the sworn account with a verified affidavit of the sworn account. *See id.*

6

claimed by the plaintiff). And, "[w]hen damages are liquidated, the rules of the procedure contemplate that the plaintiff be awarded the damages without the necessity of a hearing or the presentation of evidence." *First Nat'l Bank of Irving v. Shockley*, 663 S.W.2d 685, 689 (Tex. App.—Corpus Christi 1983, no writ.). Here, the damages could be accurately calculated by the trial court from the invoices; thus, the trial court did not err by rendering judgment for the total amount of the invoices.[5] *See id.* Thus, the invoices supported the trial court's award of damages in this case, and we overrule Maverick's third issue.[6]

### III.    PREJUDGMENT INTEREST

Maverick's fourth issue is premised on an argument that we sustained its third issue. As we have overruled Maverick's third issue, we overrule Maverick's fourth issue.

### IV.    CONCLUSION

We affirm the trial court's judgment.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
14th day of December, 2017.

---

[5] There is nothing in the record indicating why the trial court modified its judgment reducing the amount of damages or why it awarded less than what was stated in the invoices. And, although Maverick argued in its motion for new trial that the damages were incorrect, the trial court denied Maverick's motion.

[6] We note that the trial court was free to disbelieve Dane's assertions that Maverick had made certain payments to DEM that had not been credited to Maverick. *See Hanners v. The State Bar of Tex.*, 860 S.W.2d 903, 908 (Tex. App.—Dallas 1993, no writ) ("The trial court serves as fact finder at a hearing on a motion for a new trial and, accordingly, is the sole judge of the witnesses' credibility.") (citing *Jackson v. Mares*, 802 S.W.2d 48, 51 (Tex. App.—Corpus Christi 1990, writ denied)).